**In re Walter GREEN, Debtor.**

**Walter GREEN, Plaintiff–Appellant,**

v.

**A. Gray STAPLES, Jr., Assistant United States Trustee, Defendant–Appellee.**

No. 90–1731.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1991.

Decided June 5, 1991.

Robert J. Harris, argued, Baltimore, Md., for plaintiff-appellant.

Edmund Alan Goldberg, Office of The U.S. Trustee, Baltimore, Md., (Gail Goldner Green, Office of The U.S. Trustee, Baltimore, Md., John E. Logan, General Counsel, Martha L. Davis, Executive Office For U.S. Trustees, Washington, D.C., on brief), for defendant-appellee.

Before ERVIN, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.

ERVIN, Chief Judge:

Walter Green's petition for bankruptcy relief was denied on the ground that the petition constituted "substantial abuse" of Chapter 7. Green appeals the Bankruptcy Court's interpretation of 11 U.S.C. § 707(b), claiming that the fact that he was found to have income in excess of his necessary expenses is not, by itself, sufficient to support a finding of substantial abuse. We agree, and therefore we reverse and remand this case to the district court for proceedings consistent with this opinion.

I.

On March 17, 1989, Walter Green filed a voluntary petition in the Bankruptcy Court for the District of Maryland for relief under Chapter 7 of the Bankruptcy Code. The United States Trustee, upon reviewing Green's case, determined that Green had income of $638 a month in excess of the income required to pay his necessary expenses. Accordingly, the Trustee filed a motion to dismiss Green's Chapter 7 case on the ground that granting a discharge under Chapter 7 would be a substantial abuse of the Chapter pursuant to 11 U.S.C. § 707(b).

The Bankruptcy Court conducted a hearing at which Green testified that he had $40,000 in unsecured debt, had monthly income of at least $638 in excess of his necessary expenses, and was currently employed as a bus driver with Mass Transit, the same job he had held for the past 13 years. Nevertheless, Green claimed that, because of a leg injury which had caused him to be out of work for six months, he had fallen far behind in his debt payments. His 1988 income was $46,000, much of which Green attributed to substantial overtime pay. Green stated that he would not be able to work overtime in the future if his leg continued to "stiffen up." Without overtime, Green estimated that his annual pay in 1989 would be only $26,000.

It was also adduced at the hearing that Green had no dependents and that he had filed for bankruptcy once previously, in 1973.[1] His largest current debt, to a credit

---

1. The reason for this filing is not clear from Green's testimony, but it appears to have been the result of a fine imposed while he was in the

union for $21,900, had been accumulating for 10 years. The court noted that the schedule of unsecured claims that Green submitted lacked detail, but that many creditors were department stores, including elegant ones like Saks Fifth Avenue and Miller Brothers, jewellers, and consumer loan companies.

On August 17, 1989, the Bankruptcy Court issued an opinion granting the Trustee's motion, with leave to Green to convert his Chapter 7 case into a Chapter 13 filing within 30 days of the date of the Order. The basis for the court's dismissal of Green's Chapter 7 petition was that Green's possession of income in excess of his necessary expenses was sufficient, standing alone, to constitute substantial abuse of the provisions of Chapter 7 under 11 U.S.C. § 707(b). On appeal, the United States District Court for the District of Maryland affirmed the Bankruptcy Court's dismissal of Green's petition. The district court held that the Bankruptcy Court acted properly in finding substantial abuse on the sole ground of Green's excess monthly income. Green appeals.

## II.

■■■■ Green's appeal requires us to interpret a provision of the Bankruptcy Code and to review the Bankruptcy Court's findings of fact. The question of what constitutes "substantial abuse" for purposes of 11 U.S.C. § 707(b) is a matter of law, to be reviewed *de novo*. *In re Stenersen Corp.*, 61 B.R. 702, 705 (Bankr.D.Md.1986). With respect to the Bankruptcy Court's findings of fact, the appropriate standard of review is whether such findings are clearly erroneous. *Stenersen, supra*, 61 B.R. at 705 (citing Bankruptcy Rule 8013). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *In re First Federal Corp.*, 42 B.R. 682, 683 (Bankr.W.D.

Va.1984) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).

Courts have been grappling with the issue of what constitutes "substantial abuse" for purposes of Section 707(b) of the Bankruptcy Code since 1984. In that year Congress amended the 1978 Bankruptcy Code to add, *inter alia*, Section 707(b) to the preexisting Section 707(a) on dismissal of Chapter 7 petitions. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 355 (1984) (codified as amended in scattered sections of 11 U.S.C. and 28 U.S.C. (1982)). Section 707(b) reads as follows:

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C.A. § 707(b) (West Supp.1990).

Section 707(b) is one of several consumer credit amendments Congress added to the Code in response to pressure from retailers and consumer lenders who complained of an increasing number of Chapter 7 bankruptcies being filed by non-needy debtors. Prior to 1984, debtors enjoyed a virtually unfettered right to a "fresh start" under Chapter 7, in exchange for liquidating their nonexempt assets for the benefit of their creditors.[2] Section 707(b) introduced an additional restraint upon a debtor's ability to gain Chapter 7 relief, by allowing a bankruptcy court to deal equitably with the situation in which an unscrupulous debtor seeks to gain the court's assistance in a scheme to take unfair advantage of his creditors. Unfortunately, Congress did not define the term "substantial abuse" in the

---

service which he was unable to pay in the monthly amounts designated.

2. Exceptions to the debtor's access to discharge included potential Section 523(a) exceptions, Section 707(a) dismissals, and Section 727(a) objections to discharge.

text of the 1984 amendments to the Code. Moreover, no committee reports exist on the final version of the amending Act. The lone piece of legislative history which may give some insight into Congressional intent in enacting Section 707(b) is the Senate report on S. 445, 98th Cong., 1st Sess. (1983), an earlier draft of the 1984 amendments. This report states that "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." S.Rep.No. 98–65, 98th Cong., 1st Sess. 54 (1983).[3] This definition is not especially helpful, however, since it neither explains what constitutes meeting one's debts without difficulty nor attempts to reconcile itself to the previous legislative history on Section 707(a), which states in pertinent part:

> This section does not contemplate … that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 94, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5880.[4]

It is not surprising that Congress was not anxious to explicitly define the permissible grounds for substantial abuse dismissal. Section 707(b) reflects the tension between the fundamental policy concern of the Bankruptcy Code, granting the debtor an opportunity for a fresh start, and the interest of creditors in stemming abuse of consumer credit. The ambiguity of the statutory language is no doubt a reflection of Congress's inability to agree on a definition of substantial abuse which would encompass these countervailing considerations in all situations. Nevertheless, in unsuccessfully attempting to carve out such a definition, Congress considered and reject-

ed the use of a threshold future income or ability to repay test (known as "mandatory Chapter 13") as a qualification for Chapter 7 relief for consumer debtors.[5] *In re Deaton*, 65 B.R. 663, 665 (Bankr.S.D.Ohio 1968).

Appellee Staples, the United States Trustee (the Trustee) argues that we should adopt the *per se* rule embraced by the Bankruptcy Court below and affirmed by the district court, to the effect that a debtor's possession of income in excess of his necessary expenses, standing alone, constitutes substantial abuse of Chapter 7 justifying dismissal. The primary source of this rule, for both of the lower courts, was a recent Ninth Circuit decision, *In re Kelly*, 841 F.2d 908 (9th Cir.1988). A few bankruptcy courts in other jurisdictions appear to have adopted this *per se* rule. *See In re Edwards*, 50 B.R. 933 (Bankr.S.D.N.Y.1985) (debtors were discharged of debts under Chapter 7, but court enunciated rule that ability to pay 100% of debts in three years *per se* constitutes substantial abuse); *In re Struggs*, 71 B.R. 96 (Bankr.E.D.Mich. 1987) (holding that if a debtor can repay a meaningful part of his debt in a Chapter 13 plan, his Chapter 7 petition should be dismissed). *See also Waites v. Braley*, 110 B.R. 211, 217 (E.D.Va.1990) (district court, while holding that debtor's ability to pay is a primary, but not the only, factor in the substantial abuse determination, states in passing that "emerging rule" is that this factor may by itself preclude Chapter 7 discharge).[6]

We are not persuaded by the *Kelly* court's reasoning. The court, citing a string of cases standing for the proposition

---

3. S. 445 was not the vehicle for the final enactment of the 1984 amendments, for it was not passed by either chamber. *See In re Keniston*, 85 B.R. 202, 218 n. 9A (Bankr.D.N.H.1988).

4. We do not think that this item of legislative history applies only to Section 707(a), as the Trustee maintains. Since Congress explicitly rejected a future income threshold test for Chapter 7 eligibility in 1984, it is much more likely that this report was left undisturbed because no conflict was perceived between the report and Section 707(b).

5. This proposal was a feature of S. 2000, 97th Cong., 2d Sess. (1982), a Senate bill introduced prior to the passage of the 1984 Amendments.

6. Other bankruptcy courts which appear to adopt this "rule" have actually based their determination of the debtor's ability to repay on an analysis of several factors, including particularly the debtor's good faith and motivation for filing under Chapter 7. *See, e.g., In re Cord*, 68 B.R. 5 (Bankr.W.D.Mo.1986); *In re Hudson*, 56 B.R. 415 (Bankr.N.D.Ohio 1985).

that the debtor's ability to repay is a *principal* factor to be considered in determining substantial abuse, announced that proposition as a holding. *Kelly, supra*, 841 F.2d at 914. In the next sentence, the court characterized this proposition as a rule, adopted by "the overwhelming majority of the courts considering the issue," that "a debtor's ability to pay his debts will, *standing alone*, justify a section 707(b) dismissal." *Id.* (emphasis added). This logical leap is unsupported, for to say that a conclusion may be justified by a certain factor as the principal one of several does not imply that the conclusion may also be drawn from that factor alone.

*Kelly* is correct, however, insofar as it indicates that the majority of the cases hold that the debtor's ability to repay is the *primary* factor to be considered. The consensus among these courts is that the substantial abuse determination must be made on a case-by-case basis, in light of the totality of the circumstances. *See, e.g., In re Krohn*, 886 F.2d 123 (6th Cir.1989); *In re Walton*, 866 F.2d 981 (8th Cir.1989); *In re Keniston*, 85 B.R. 202 (Bankr.D.N.H. 1988); *In re Strong*, 84 B.R. 541 (Bankr.N. D.Ind.1988); *In re Peluso*, 72 B.R. 732 (Bankr.N.D.N.Y.1987); *In re White*, 49 B.R. 869 (Bankr.W.D.N.C.1985); *In re Grant*, 51 B.R. 385 (Bankr.N.D.Ohio 1985). The "totality of the circumstances" approach involves an evaluation of factors such as the following:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*Strong, supra*, 84 B.R. at 545; *Grant, supra*, 51 B.R. at 392; *Peluso, supra*, 72 B.R. at 736 (citing substantially similar factors drawn from cases cited).[7]

■ Exploring these factors, as well as the relation of the debtor's future income to his future necessary expenses, allows the court to determine more accurately whether the particular debtor's case exemplifies the real concern behind Section 707(b): abuse of the bankruptcy process by a debtor seeking to take unfair advantage of his creditors. The debtor's relative solvency may raise an inference that such a situation exists. Nevertheless, in light of the statutory presumption that a debtor's Chapter 7 petition should be granted, solvency alone is not a sufficient basis for a finding that the debtor has in fact substantially abused the provisions of Chapter 7.

Moreover, nowhere in the Code is there a requirement that a debtor be insolvent in order to file for bankruptcy. Section 109, which the 1984 Amendments left unchanged, allows any person to be a debtor under Chapter 7 unless he comes within one of several limited exceptions, none of which apply to consumer debtors and none of which are predicated upon anticipated income. 11 U.S.C.A. § 109 (1979 & West Supp.1990). Section 109, taken together with the Senate report on Section 707(a) cited *infra*, provides a strong indication that Section 707(b) was intended to explicitly recognize the court's ability to dismiss a Chapter 7 petition for lack of good faith—when "the total picture is abusive." *Waites v. Braley, supra*, 110 B.R. at 215 (quoting bankruptcy court Opinion and Order; *but see* 217, holding that neither bad faith nor fraud is an element required for a finding of substantial abuse).

■ We think that a totality of the circumstances analysis is much to be pre-

---

**7.** Some courts have also held that the ability to repay factor *must* be coupled with other factors in order to find substantial abuse. *In re Deaton*, 65 B.R. 663, 665 (Bankr.S.D.Ohio 1986) (other factors beside mere fact that debtor has capability of funding a Chapter 13 plan are needed to find substantial abuse); *In re Shands*, 63 B.R. 121, 124 (Bankr.E.D.Mich.1985) (ability to pay 100% of debt within 3 years, when coupled with some egregious circumstance, is sufficient to deny Chapter 7 relief).

ferred to the application of a *per se* rule, not only because it better accords with what is known of Congressional thinking surrounding the adoption of Section 707(b), but also because it is consistent with the statutory presumption in favor of granting the relief requested by the debtor. The establishment of a future income threshold of eligibility for Chapter 7 by means of the *per se* rule we are urged to adopt would render this presumption toothless. A debtor who has filed a Chapter 7 petition has elected to discharge his debts by liquidating his non-exempt assets. If the debtor, acting in good faith, preferred to effect the discharge by making extended payment to his creditors over time, presumably he would have filed under Chapter 13. The court may advise the latter, but the election remains with the debtor, a point underscored by Congress's explicit refusal to adopt a mandatory Chapter 13 provision.[8]

We therefore adopt the totality of the circumstances test as the appropriate analysis to be followed in determining whether substantial abuse exists. We remand this case to the district court with instructions to return it to the bankruptcy court, which should apply the five factors we have enumerated. The bankruptcy court's analysis should reflect consideration of the Section 707(b) presumption in favor of granting the requested relief. In making a judgment on the question of substantial abuse, the court may find it helpful to consult the following cases: *In re Grant*, 51 B.R. 385, 396 (Bankr.N.D.Ohio 1985) (citing debtor's "freewheeling spending," which included monthly entertainment expenses of $450 and Christmas expenditures of $900); *In re Peluso*, 72 B.R. 732, 738 (Bankr.N.D.N.Y.1987) (debtor with substantial income altered his monthly obligations in statements to the court at least three times; filing of petition was not precipitated by any injury, illness, or loss of employment); *In re Shands*, 63 B.R. 121, 123 (Bankr.E.D.Mich.1985) (debtor's choice of Chapter 7 over Chapter 13 was not motivated by inability to afford repayment but by some personal motive, where debtor was voluntarily paying favored creditors a weekly amount greater than her claimed excess income).

The district court's decision in this case is

REVERSED AND REMANDED

---

8. A *per se* rule dismissing Chapter 7 petitions if the debtor has the ability to substantially repay his creditors could only be effective if the debtor is also eligible for Chapter 13. However, Chapter 13, unlike Chapter 7, has a statutory limitation on the amount of debt a debtor may have to be eligible. A debtor who is ineligible for either form of relief is foreclosed from bankruptcy protection entirely unless he can file under Chapter 11. There is some conflict of opinion as to whether individual non-business debtors can file under Chapter 11, but Section 109 does not preclude such a filing. *See In re Moog*, 774 F.2d 1073 (11th Cir.1985) (holding that such a filing is permissible). A debtor who can file under Chapter 11 can thwart the dismissal of his Chapter 7 petition, for under Chapter 11 the debtor's future income is not property of the estate as it is under Chapter 13. Thus the debtor could discharge his debts under Chapter 11 by liquidation of his non-exempt assets, just as he would have done under Chapter 7.