**In the Matter of James Douglas BLAIR, Jr., SSN: 428–11–7197, Debtor.**

**Bankruptcy No. 94–42504.**

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

April 13, 1995.

Thomas M. Semmes, Anniston, AL, for debtor.

Thomas Corbett, for bankruptcy administrator.

---

## MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

This proceeding came before the Court on the Bankruptcy Administrator's motion to dismiss the above styled case for "substantial abuse" pursuant to 11 U.S.C. § 707(b). Appearing before the Court were the attorney for the debtor and the attorney for the bankruptcy administrator.

Blair, the debtor, filed this chapter 7 petition on November 30, 1994. After a review of the debtor's petition, the bankruptcy administrator's office sent the debtor's attorney a letter dated January 3, 1995. This letter informed the debtor's attorney "that the debtor primarily owes consumer debts and that the debtor's income exceeds his monthly living expenses to the extent that the debtor could pay a substantial portion of his debt over a period of time under a chapter 13 plan." The letter also suggested that the debtor review the schedules to insure their accuracy. Finally, the letter informed the debtor's attorney that if no response to the letter was received within 10 days, the bankruptcy administrator would file a motion to dismiss pursuant to § 707(b). The debtor failed to respond to the letter so, on February 24, 1995, the bankruptcy administrator filed the present motion.

At the hearing, the parties stipulated to the following facts: 1) the debtor's debts are primarily consumer debts; 2) the debtor has no secured debt; 3) the debtor has no debt entitled to priority; 4) the debtor has an excess income of two hundred sixteen ($216.00) dollars a month; 5) there is slightly less than seven thousand ($7,000.00) dollars in unsecured debt; and 6) a chapter 13 plan, paying 100%, would pay out in approximately forty (40) months. Based on these facts this Court determined that the debtor's chapter 7 case is due to be dismissed for substantial abuse of the provisions of chapter 7.

## CONCLUSIONS OF LAW

In 1984, Congress amended the Bankruptcy Code to add several consumer credit provisions. The 1984 amendments were "in response to pressure from retailers and consumer lenders who complained of an increasing number of chapter 7 bankruptcies being filed by non-needy debtors." *Green v. Staples,* 934 F.2d 568, 570 (4th Cir.1991); *see also In re Walton,* 866 F.2d 981, 983 (8th Cir.1989); *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989). Section 707(b) was one of those amendments. The legislative history of the 1984 amendments sheds some light on the goal of § 707(b): "dismissal for substantial abuse is intended to uphold creditor's interests in obtaining repayment where such repayment would not be a burden." S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983).

11 U.S.C. § 707(b) provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts and if it finds that granting such relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

Section 707(b) of the Code is somewhat schizophrenic; there is a tension between granting the debtor an opportunity for a fresh start and the interest of creditors in thwarting the abuse of consumer credit. An indication of this tension is the fact that Congress failed to provide a definition for substantial abuse. The task was left to the courts.

Nearly all of the courts that have addressed the issue of "substantial abuse" under 11 U.S.C. § 707(b) have concluded that the "single most important indicator of substantial abuse is the presence of enough disposable income to realistically enable the debtor to repay a significant portion of his

debts through a chapter 13 plan." *In re Woodhall,* 104 B.R. 544, 545 (Bankr.M.D.Ga. 1989); *see also Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 914–15 (9th Cir.1988); *In re Gaukler,* 63 B.R. 224, 225 (Bankr.D.N.D. 1986). In fact, many courts have held that the ability to fund a chapter 13 plan that will repay a substantial portion of the debtor's unsecured debt can be a sufficient reason to dismiss in and of itself. *See, e.g. United States Trustee v. Harris,* 960 F.2d 74, 77 (8th Cir.1992); *In re Kelly,* 841 F.2d 908 (9th Cir.1988); *but see In re Deaton,* 65 B.R. 663, 665 (Bankr.S.D.Ohio 1986) ("the mere ability to fund a chapter 13 plan is not sufficient to constitute 'substantial abuse' ").

 Rather than adopt the one factor test of the *Kelly* and *Harris* courts, this Court chooses to adopt a totality of the circumstances test for substantial abuse. "The consensus among [these] courts is that the substantial abuse determination must be made on a case by case basis, in light of the totality of the circumstances." *In re Green,* 934 F.2d 568, 572 (4th Cir.1991). Certainly the ability of the debtor to fund a chapter 13 plan is the most significant factor, however other factors should be considered as well. This Court adopts the factors articulated by the Fourth Circuit in *In re Green,* 934 F.2d 568 (4th Cir.1991):

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*Id.* at 572.

Considering the totality of the circumstances, the debtor's case is due to be dismissed for substantial abuse of chapter 7.

██ The debtor's attorney asserts that this filing is not "substantial abuse" because the plan would take longer than 36 months to fully pay out. This argument does *non persuasit,* or as they say down here, "that dog won't hunt." In *In re Kress,* 57 B.R. 874 (Bankr.D.N.D.1985), the court dismissed the debtor's chapter 7 petition even though the plan required over 3 years. The court in *In re Woodhall,* 104 B.R. 544 (Bankr.M.D.Ga. 1989) dismissed a debtor's chapter 7 petition even though a chapter 13 plan required over four years to pay out. In the case of *In re Walton,* 866 F.2d 981 (8th Cir.1988), the Court of Appeals affirmed a finding of substantial abuse with respect to a debtor who had $22,000.00 in unsecured debt and $500.00 a month in excess income (Approximately 5 years to pay 100%). There are numerous other cases in which debtors' chapter 7 petitions were dismissed for substantial abuse despite the fact that chapter 13 plans would take longer than 3 years to pay out. The debtor in this case could propose a forty month full pay plan; this does not approach the 60 month upper limit established by Congress. Moreover, the debtor has $216.00 a month with which to fund a plan. The debtor could propose a 36 month plan that would pay approximately 83% of the allowed claims, assuming a normal attorney's fee and that all debts turn out to be allowed claims.

Based upon the stipulations of fact and conclusions of law, this Court concludes that granting this debtor relief under Chapter 7 would be a substantial abuse of the provisions of the chapter as well as perverting the purpose of the Bankruptcy Code: to give a fresh start to the honest but unfortunate debtor.

A separate order dismissing this case has been entered.