**In re Debbie POLLARD, Debtor.**

**No. 02–11302–BH.**

United States Bankruptcy Court, W.D. Oklahoma.

June 23, 2003.

Charles E. Snyder, Oklahoma City, OK, Assistant United States Trustee.

Jerry D. Brown, Jerry D. Brown, P.C., Oklahoma City, OK, Counsel for Debtor.

## *ORDER DENYING UNITED STATES TRUSTEE'S MOTION TO DISMISS PETITION PURSUANT TO 11 U.S.C. § 707(b)*

RICHARD L. BOHANON, Bankruptcy Judge.

This matter came on for hearing on the motion of the United States Trustee ("UST") to dismiss the Debtor's Chapter 7 petition for substantial abuse pursuant to 11 U.S.C. § 707(b). For reasons set forth below, the Court denies the UST's motion.

### *Background*

A brief recitation of facts is in order. The UST filed the motion to dismiss on May 6, 2002. At that time, the Debtor was represented by Mike Rose. Rose filed an objection to the UST's motion to dismiss, and the Court conducted a hearing on the contested motion to dismiss on June 18, 2002. Following conclusion of the evidence and argument, the Court ordered that the Debtor would have 10 days to convert her case to one under Chapter 13 or the petition would be dismissed. An order to that effect was submitted by the UST and was entered on June 20, 2002.

The Debtor then timely appealed the Court's order to the District Court for the Western District of Oklahoma. The District Court vacated this Court's order and remanded with directions for the Court to conduct a rehearing to consider the "totality of the circumstances." The District Court concluded that the Court had not properly applied the "totality of the circumstances" test as announced by the Court of Appeals for the Tenth Circuit in *In re Stewart*. *See In re Stewart*, 175 F.3d 796 (10th Cir.1999).

In the meanwhile, Rose withdrew as counsel for the Debtor. The rehearing on the UST's motion was postponed until May 14, 2003. The Debtor obtained new counsel for the rehearing. The Court heard testimony and argument on the motion to dismiss on May 14, 2003. Upon conclusion of the evidence and argument by counsel, the Court took the matter under advisement.

### *Discussion*

### I. *Applicable Legal Standards*

Section 707(b) provides:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

11 U.S.C. § 707(b). Dismissal for substantial abuse may only be raised by the Court

sua sponte or on motion of the UST. *See id.*

The debtor's debts must "primarily" be consumer debts. The Tenth Circuit Court of Appeals has held that "primarily" means that the debts are over 50% consumer debts. *See In re Stewart,* 175 F.3d at 808. *Collier on Bankruptcy* explains that the term "would seem to imply that the debts should reflect a strong consumer orientation." *See* 6 *Collier on Bankruptcy* ¶ 707.04[4] at 707–22(Lawrence P. King, ed., 15th ed.2001).

■ "Consumer debt" is defined in the Bankruptcy Code to mean "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Consumer debt can also be differentiated from non-consumer debt because non-consumer debt is debt incurred with a motive for profit. *See In re Stewart,* 175 F.3d at 806.

On the other hand, "substantial abuse" is not defined in the Code. The Tenth Circuit has adopted a "totality of the circumstances test" for determining whether there has been substantial abuse. *See id.* at 809. It noted that ability of the debtor to repay her debts was the primary factor to consider; however, it was not the only consideration. *See id.*

■ Other considerations include the following:

- whether the debtor suffered unique hardships such as sudden illness, calamity, disability or unemployment;
- whether the debtor's cash advances and consumer purchases exceeded her ability to pay;
- whether she enjoys a stable income;
- whether expenses could be reduced without depriving the debtor and her family of the necessities of life like food and shelter;

- whether the debtor's schedules accurately reflect her true financial condition;
- and whether the debtor has demonstrated good faith in filing for Chapter 7 relief.

*See id.* at 809–10.

The Bankruptcy Code provides that there is a presumption against dismissal for substantial abuse in favor of the debtor. *See* § 707(b). *See also, Collier on Bankruptcy, supra,* ¶ 707.04[5][a] at 707–26. "Therefore, it appears that the presumption is an indication that in deciding the issue, the court should give the benefit of the doubt to the debtor and dismiss the case only when a substantial abuse is clearly present." *Id.*

## II. Parties' Contentions

The UST contends that the totality of the circumstances in this case amount to substantial abuse by the Debtor. Specifically, the UST asserts that the Debtor's debts are primarily consumer debts. The Debtor's schedules show that at the time she filed her petition she owed approximately $71,000 on secured claims and almost $19,000 in unsecured claims. The UST further argues that the Debtor has sufficient disposable income so that she could easily repay her unsecured creditors through a Chapter 13 plan.

The UST further points out that the Debtor has not experienced any unique hardship such as a sudden illness or unemployment. Also, the UST maintains that the Debtor has a secure job that affords her a stable income. The UST also argues that the Debtor's expenses can be reduced without detrimental effects to her or her family. The UST questions the Debtor's good faith because she failed to list her interest in her retirement fund and her interest in her ex-husband's retirement fund.

The Debtor counters that she has been through a protracted divorce and anticipates that she will continue to incur legal fees associated with the divorce proceedings. At present, she estimates she owes approximately $30,000 in legal fees to three separate attorneys. Also, she claims her expenditures are not out of reason for herself and her family. She has one minor son and a son who lives with her while attending college.

The Debtor credibly testified that her expenses have increased since she filed her petition. She claims her ex-husband has dropped health insurance for her minor son so she will have the increased expense of providing her son with medical insurance.[1] Her son also needs significant orthodontic care that the Debtor estimates will cost $4,000.

Since filing her petition, the Debtor has experienced costly home repairs including the purchase of a new hot water heater and draining of the septic tank. Likewise, the Debtor has incurred almost $2100 in expenses to repair her 1997 Chevy Blazer. She expects she will have to have further repairs completed on the vehicle's transmission which is slipping.

The Debtor candidly admits that the omission of her interest in two retirement funds was an oversight. She asserts those interests were not intentionally left out of her petition. Rather, she contends that she believed she was not to include those since she had no present right to them.

## III. Application of the Totality of the Circumstances Test

■ The present case is far from a clear-cut case. Both parties make strong arguments in their favor.[2] Nevertheless, upon consideration of the totality of the circumstances and the statutory presumption in the Debtor's favor, the Court must conclude that there is no substantial abuse in this case.

### A. Ability to Pay

Using the expenses scheduled by the Debtor, the UST estimates that the Debtor's monthly expenses are $3,333. The UST urges that these expenses could be reduced by deleting payments for credit cards and attorney's fees. The Debtor's approximate take home pay is $2821. She also receives $253 for child support. This brings her total monthly income to $3074. Thus, the UST submits that the Debtor has approximately $671 in disposable monthly income. Using these figures, the UST estimates that the Debtor could pay about $21,740 over 36 months on a Chapter 13 plan, including the 10% Chapter 13 fee.

On the other hand, the Debtor's credible testimony is that her monthly expenses have increased since filing her petition. She will likely incur medical expenses for her minor son. Her vehicle has already required costly repairs and is on the verge of needing more repairs. She has sustained unexpected repairs to her home.

---

1. The Debtor's ex-husband testified to the contrary. He stated that he had not dropped health insurance coverage for his son. Like the Debtor, he too was credible. This controversy appears to be typical of the relationship between the Debtor and her ex-husband. Thus, this unsettled issue only convinces the Court that the likelihood of continued litigation between the Debtor and her ex-husband is sadly inevitable.

2. The trustee testified that in this District the UST has instructed case trustees to complete and submit a form that then may instigate a motion to dismiss by the UST. No one has raised the issue of whether or not this requirement violates the independent investigation requirement of the statute, and it is not necessary to reach that issue for the purposes of this decision.

The Court is also convinced from the testimony of the Debtor and her ex-husband that continued legal battles are likely.

Thus, the Court is not persuaded that the Debtor has the ability to fund a Chapter 13 plan.

### B. Unique Hardships

The Court finds that the Debtor has not suffered any sudden illness, calamity or unemployment.

### C. Whether Cash Advances and Purchases Exceed Ability to Pay

The Court finds that this factor is inapplicable in this case as neither side presented evidence that goes to this factor.

### D. Stable Income

Schedule I of the Debtor's petition shows that the Debtor has been employed with the Department of Defense for almost 17 years. Consequently, the Court must conclude that the Debtor has, and will continue to have, a stable income.

### E. Whether the Debtor's Expenses Can be Reduced

In the present case, the evidence shows that the Debtor's expenses continue to escalate. As already noted, the Debtor reasonably anticipates significant future expenses for her son's health insurance and orthodontic care. She has already had the cost of substantial repairs to her vehicle and more repairs are likely. She continues to incur legal fees. Additionally, she has had to make needed repairs to her home. Based on these items, the Court is not convinced that the Debtor's expenses can be significantly reduced. To the con-trary, it seems her expenses are only likely to continue to increase.[3]

### F. Accuracy of Debtor's Schedules

In *In re Stewart*, the Tenth Circuit also noted that another consideration for the totality of the circumstances is whether the debtor's schedules accurately reflect the debtor's true financial condition. *See In re Stewart*, 175 F.3d at 810 n. 13. Here, the UST points out that the Debtor failed to disclose her interest in her retirement fund and her ex-husband's retirement fund. The Debtor explained this as an unintentional oversight.

The Court finds the Debtor's testimony is believable. The Court is convinced that the Debtor had a good faith belief, though mistaken belief, that she was not supposed to include her interests in the retirement funds because she could not access the money until she had retired. The evidence does not show that the Debtor was intentionally misleading about her financial condition.

### G. Good Faith

As noted throughout this decision, the Court finds that Debtor's testimony on events surrounding her filing her petition credible and compelling. The Court concludes that she filed her Chapter 7 petition in good faith.

She testified that she was unable to pay her bills and ultimately had to file for bankruptcy. The Debtor's ex-husband testified that she threatened that she would never pay the judgment awarded to him in the divorce proceedings. The Debtor filed her bankruptcy petition short-

---

3. The UST's figure for the Debtor's monthly expenses is $3,333. This figure comes from the Schedule J of the petition. From review of Schedule J, it appears that $180 of the $3,333 figure is attributable to charitable con-tributions. The plain language of § 707(b) makes clear that the Court may not consider any qualified charitable contributions made by the Debtor in deciding on the motion to dismiss. *See* § 707(b).

ly after this judgment was entered against her.

Accepting these recitations as true, the Court still must conclude that the Debtor acted in good faith. It is not uncommon for debtors to find themselves facing bankruptcy following protracted divorce proceedings, and this by itself does not mean that the petition was not filed in good faith.

### IV. The UST's Motion Must Be Denied

Consideration of the above factors, viewed in a totality of the circumstances, brings the Court to conclude that there is no "substantial abuse" in the present case that warrants dismissal of the petition. Moreover, § 707(b) provides that there is a presumption in favor of granting relief to the Debtor.

This Court has noted that the presumption represents a "policy goal established by Congress that allows the court to use its discretion in applying section 707(b)." *In re Higuera,* 199 B.R. 196, 200 (Bankr. W.D.Okla.1996).

■ *Collier on Bankruptcy* has stated: In determining whether a substantial abuse exists, there is a presumption in favor of granting the relief sought by the debtor, i.e., a discharge....[I]n light of this presumption solvency is not a sufficient basis for a finding of substantial abuse. The "total picture" must be abusive. Clearly, the burden of proof and burden of production in a motion to dismiss for substantial abuse rest with the moving party.

But the statutory presumption is obviously meant to be something more than simply a rule about the burden of proof, since that burden would already have been on the party seeking to dismiss the case. In a substantial abuse matter, when the court *sua sponte* raises the substantial abuse issue, it is unlikely that the judge deciding the case will also present evidence. *Therefore, it appears that the presumption is an indication that in deciding the issue, the court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present.* A similar standard would apply when the cause for dismissal is raised by a motion by the United States trustee.

6 *Collier on Bankruptcy* ¶ 707.04[5][a] at 707–26(Lawrence P. King, ed., 15th ed.2001)(footnotes omitted)(emphasis added). This Court is in firm agreement that any doubt should be resolved in favor of a debtor. *See Green v. Staples (In re Green),* 934 F.2d 568, 573 (4th Cir.1991)(remanding case to bankruptcy court to consider the motion to dismiss under the "totality of the circumstances" and advising the bankruptcy court that its "analysis should reflect consideration of the Section 707(b) presumption in favor of granting the requested relief.").

The UST directs this Court to a decision from a Colorado bankruptcy court that discusses a shifting burden of proof under § 707(b). *See In re Cohen,* 246 B.R. 658, 665 (Bankr.D.Colo.2000)(decided by Judge Sidney Brooks). That court held that the moving party has the initial burden of showing that the schedules show the debtor has the ability to make very substantial payments on her unsecured indebtedness. Once the movant satisfied this initial burden, the burden shifts to the debtor "to produce evidence of entitlement to the relief sought." *Id.*

However, the holding in *In re Cohen* is not binding precedent on this Court. Also, even if the Court applied the approach taken by the court in *In re Cohen* concerning a shifting of the burden of proof, this Court is not convinced that the evidence demonstrates that the Debtor has the abil-

ity to make significant payments on her unsecured debts. Indeed, the evidence shows that the Debtor's expenses continue to rise and are likely to continue to do so.

Therefore, the Court must conclude that the evidence presented viewed in the totality of the circumstances shows that there is not substantial abuse in this case.[4] The Court must deny the UST's motion to dismiss.

### Conclusion

Accordingly, upon the evidence presented, the testimony rendered, and the legal arguments of the parties, the Court holds that the UST's motion to dismiss the petition is hereby denied.

---

4. The present case is analogous to this Court's previous decision in *In re Higuera*, 199 B.R. 196 (Bankr.W.D.Okla.1996). In that case, the debtor also had gone through a divorce. The debtor's monthly income was about $2000 and his living expenses were about $1000. The Court concluded, under the totality of the circumstances, that there was no substantial abuse.